*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* POMEROY, Minors.

UNPUBLISHED
November 25, 2025
2:00 PM

No. 373146
Kent Circuit Court
Family Division
LC Nos. 22-052568-NA
22-052569-NA

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating her parental rights to her twin minor children, JP and AP, under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist with no reasonable likelihood of being rectified in a reasonable time), MCL 712A.19b(3)(g) (parent, while financially able to do so, fails to provide proper care or custody for the child), and MCL 712A.19b(3)(*i*) (parent failed to rectify conditions which led to termination of parental rights to the child's sibling due to neglect or abuse). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after JP and AP tested positive for methamphetamines, amphetamines, and marijuana at birth. The twins were removed from respondent's care and placed in a foster home. Respondent already had a history with Children's Protective Services (CPS) when the twins were born—her parental rights to two other children were involuntarily terminated due to parental issues related to substance abuse, domestic violence, and homelessness.

At the outset of this case, respondent's barriers to reunification were identified as substance abuse, emotional stability, housing, employment, and parenting skills. By the adjudication,

---

[1] The children's father is not a party to this appeal. Thus, we will refer to respondent simply as "respondent."

-1-

respondent had tested positive for methamphetamines and amphetamines three times, did not have her own housing, and was unemployed. That said, respondent consistently attended parenting times with the children, only missing two visits because of illness. Respondent also came prepared for parenting time with necessities for the children and the visits went well overall. Her caseworker reported it did not appear as though respondent was under the influence during these visits.

As the case progressed, respondent's participation and progress fluctuated. From January 2023 to December 2023, respondent made progress toward reunification by participating in rehabilitation programs, undergoing drug screening, attending substance-abuse meetings, engaging in counseling and therapy, completing a psychological evaluation, obtaining employment, and completing a parenting course. While respondent maintained her sobriety for about 100 days in 2023, she tested positive for methamphetamines and amphetamines in February, and tested positive for cocaine in September.

In December 2023, however, respondent's intermittent success faltered. Specifically, she ceased communicating with her caseworker after testing positive for methamphetamines, amphetamines, and marijuana. She also began canceling parenting time visits. The twins exhibited emotional dysregulation when respondent canceled. Respondent did not reconnect with her caseworker until either late-February or late-March 2024. Petitioner, the Michigan Department of Health and Human Services (DHHS), sought to terminate respondent's parental rights around this time. The petition cited various factors in support of termination, including: (1) respondent's parental rights to two other children were involuntarily terminated, which involved "the same issues that she presented with when the twins were born[;]" (2) the twins were born positive for methamphetamines, amphetamines, and marijuana; (3) respondent stopped communicating with her caseworker; (4) respondent had not attended a parenting time visit with the twins since November 2023; (5) respondent had not undergone a drug screen since December 2023, and this screen was positive for methamphetamines, amphetamines, and marijuana; (6) respondent was discharged from the Supportive Visitation Program due to poor attendance; (7) when she did attend parenting times, respondent engaged with the children but consistently needed help tending to both babies and "had trouble reading their cues[;]" (8) respondent struggled to earn sufficient income, and declined multiple offers to help her apply for state benefits because she had tried previously and failed; and (9) respondent, despite being provided with housing resources, still lacked independent housing, and her "current whereabouts [were] unknown."

Shortly after the termination petition was filed, the children's lawyer-guardian ad litem (LGAL) moved to suspend respondent's parenting time, as she had been absent from their lives for over four months, and the twins struggled when she canceled visits before. The trial court declined to hold a termination hearing at the time, but agreed to suspend respondent's parenting time until she demonstrated clean drug screens for 45 days. As the case continued, respondent tested positive for marijuana in her drug screens, but explained she had a medical marijuana card. As for other efforts to rectify her barriers to reunification, respondent did not want to go into an intensive inpatient treatment program because she did not want to risk losing her job. In June 2024, the trial court granted respondent's motion to reinstate her parenting time.

After a two-day termination hearing, the trial court issued an opinion and order terminating respondent's parental rights to JP and AP. In the 21-page opinion, the trial court provided a detailed summation of respondent's barriers to reunification. It found by clear and convincing

evidence that statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(*i*), existed. It reasoned that 18 months had passed since the initial disposition and respondent had failed to address her barriers to reunification. The trial court also found that it was in the children's best interests to terminate respondent's parental rights, noting that: (1) the children's bond with respondent had diminished due to respondent's disappearance; (2) respondent was unable to properly address the children's needs during parenting times, resulting in their emotional dysregulation after visits; (3) the children needed permanency, stability, and finality; and (4) the foster home in which the children lived was able to provide the care and stability needed. Respondent now appeals.

## II. REASONABLE EFFORTS

Respondent first argues that the trial court erred in finding that reasonable efforts had been made to prevent termination. We disagree.

### A. STANDARD OF REVIEW

We review a trial court's finding on reasonable efforts for clear error. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Absent aggravating circumstances, DHHS "has a statutory duty to make 'reasonable efforts to reunify the child and family[.]' " *Id*., quoting MCL 712A.19a(2). "This means [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Atchley*, 341 Mich App at 338-339 (quotation marks and citation omitted). "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Id*. at 339 (quotation marks and citation omitted). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *Id*. (quotation marks and citation omitted).

Respondent argues that DHHS failed to make reasonable efforts because of various delays in reengaging her in services after her lengthy absence. With regard to substance abuse, respondent argues that DHHS was slow to meet with her after she reengaged, caused delays in getting the proper referrals made, and failed to refer her to an intensive outpatient program when she indicated she did not want to participate in an inpatient program because of her work. Respondent contends that, "in a case that was rapidly proceeding toward termination and offered little time for [her] to make improvements, [DHHS's] failure to timely act caused irreparable harm to [her] progress[.]"

However, respondent fails to acknowledge DHHS's considerable efforts in offering her services before her relapse and disengagement, which is what led to the goal change to termination, and fails to recognize her own role in the matter. In doing so, respondent ignores her "commensurate responsibility" to partake in her service plan, focusing instead on her assertion that

DHHS did not provide her with additional services that she believes would have been beneficial to her. But this is not the standard that guides our analysis. *Black's Law Dictionary* defines reasonable efforts as "[o]ne or more actions rationally calculated to achieve a [usually] stated objective, but not necessarily with the expectation that all possibilities are to be exhausted." *Black's Law Dictionary* (12th ed). Consistent with this definition, this Court has generally recognized reasonable efforts include referrals for services, drug screens in substance abuse cases, counseling, and tailored assistance with specific needs such as transportation. See, e.g., *In re Atchley*, 341 Mich App at 339-342. Respondent conflates the reasonable efforts standard applicable to this case to the more rigorous "active efforts" standard required for termination of parental rights under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*:

> By definition, active efforts are more intensive than "reasonable efforts" and require the worker to thoroughly assist the family in accessing and participating in necessary services that are culturally appropriate and remedial and rehabilitative in nature.

> Example: Reasonable efforts might be the worker making a referral for services and attempts to engage the family in services, but active efforts might be the worker consulting with the tribe regarding case planning, making a referral to services, attempts to engage the family in services and providing transportation to the services. [*In re JL*, 483 Mich 300, 322 n 15; 770 NW2d 853 (2009) (quotation marks and citation omitted).]

In this case, DHHS provided respondent with referrals to parenting classes, housing assistance, substance abuse treatment, and counseling. It also offered to help with transportation if needed. Many of these services lapsed when respondent disengaged with her children and court-ordered services during her relapse. We also defer to the trial court's credibility determination that the caseworker's explanation for the delays in reinitiating services after respondent reengaged was reasonable. See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014) ("We defer to the special ability of the trial court to judge the credibility of witnesses."). Given the services offered by DHHS and our deference to the trial court's credibility determinations, the trial court did not clearly err when it found that reasonable efforts had been made.

## III. STATUTORY GROUNDS

Respondent next argues that the trial court erred by finding that statutory grounds existed to terminate her parental rights to the twins. We disagree.

## A. STANDARD OF REVIEW

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been provided by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "We review for clear error the trial court's decision whether grounds for termination have been proven by clear and convincing evidence." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been

made with the reviewing court deferring to the special ability of the trial court to judge the credibility of witnesses." *Id*. (quotation marks, citation, and brackets omitted).

## B. ANALYSIS

The trial court found that grounds for terminating respondent's parental rights existed under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(*i*), which authorize termination in the following situations:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (*i*) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

The trial court correctly found that grounds for termination existed under MCL 712A.19b(c)(*i*). It is undisputed that, by the time respondent's parental rights were terminated, more than 182 days had passed since the initial dispositional order. *Id*. Furthermore, many of the conditions which led to the adjudication still existed by the time of termination, and there was no reasonable likelihood that they would be rectified in a reasonable time given the children's age. *Id*. While respondent had secured employment, her psychological evaluation indicated no mental health disorders, and the record is inconsistent on the progression of her parenting skills, she continued to struggle with substance abuse and housing, which the trial court identified as the two most significant barriers at the outset of this case.[2]

---

[2] Respondent argues the trial court improperly relied on her marijuana use because she had a medical marijuana card. We need not address the trial court's offhand remarks about respondent's marijuana use, because the record clearly demonstrates that respondent failed to rectify her substance abuse barrier as shown by her numerous positive screens for methamphetamines and amphetamines.

-5-

Respondent's substance abuse was the most significant barrier to reunification of the family. While respondent showed some improvement, she also suffered setbacks and even relapsed, which apparently led to her decision to remove herself from the children's lives for months. Throughout the proceedings, respondent presented a pattern of improvement followed by regression. By the time of the termination hearing, respondent had not been able to demonstrate consistent, lasting sobriety. Additionally, given her inconsistent behavior during the proceedings below, as well as the fact that respondent's substance-abuse problem has lasted for "nearly a decade," we conclude that the trial court did not clearly err when it found that respondent would not be able to rectify this barrier within a reasonable time given the children's age.

Respondent's unresolved homelessness was another barrier to reunification on which the trial court relied. At no point during this case did respondent procure independent, appropriate housing for herself and the children. By the termination hearing, she was living with family but the home was deemed inappropriate because it did not have adequate space and rooms for the children. Respondent argued she was trying to get a felony expunged from her record so that she could have an easier time getting housing, but the record reflects that her caseworker provided her with felony-friendly landlords. Additionally, the trial court noted that there was no evidence respondent initiated her expungement efforts until April 2024, despite the fact that her children were removed in November 2022. The record supports the trial court's finding that respondent had failed to rectify her housing barrier by the time of the termination hearing and that she would not be able to do so in a reasonable time given the children's age. Because the record supports the trial court's finding that respondent failed to rectify the two most significant barriers to reunification by the termination hearing, and would not be able to do so in a reasonable time given the children's age, the trial court properly found that MCL 712A.19b(3)(c)(*i*) was satisfied.[3]

## IV. BEST INTERESTS

Respondent finally argues that the trial court erred by finding it was in the children's best interests to terminate her parental rights. We disagree.

## A. STANDARD OF REVIEW

"[O]nce a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be provided by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's decision regarding a child's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40.

---

[3] Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the [trial] court erroneously found sufficient evidence under other statutory grounds[,]" *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), we need not address the other two statutory grounds at issue in this case.

## B. ANALYSIS

"To determine whether termination of parental rights is in a child's best interests, the [trial] court should consider a wide variety of factors[.]" *In re White*, 303 Mich App at 713. These factors "may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). A trial court "may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*.

The trial court found that the bond between respondent and the children had diminished because of the period during her relapse in which she did not attend parenting times. It further found that, before this period, the children suffered emotional dysregulation when respondent would cancel visits, with JP engaging in self-harm. Indeed, even when parenting time occurred, the children would be dysregulated. The trial court reasoned that the children needed stability, permanency, and finality, and respondent's failure to complete the services she was offered or make any significant progress toward rectifying her two most significant barriers was incompatible with these needs. The trial court contrasted respondent's demonstrated inability to provide a stable and safe environment for the children with their foster home, in which the children had been placed since their removal. The foster home was able to provide proper care for the children, manage their schedules, and support their growth and development. These factors support the trial court's finding that it was in the children's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford